TIMOTHY COURCHAINE
United States Attorney
District of Arizona

SHEILA PHILLIPS
Assistant U.S. Attorney
Michigan State Bar No. P51656
RACHEL E. NAVA
Assistant U.S. Attorney
Arizona State Bar No. 030630
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Sheila.Phillips2@usdoj.gov
        Rachel.Nava@usdoj.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America,<br><br>              Plaintiff,<br><br>      vs.<br><br>James Bond,<br>    a.k.a. Jaymes Christopher Schulte,<br><br>              Defendant. | CR-23-01238-PHX-KML<br><br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE DRAFT PRESENCE REPORT AND SENTENCING MEMORANDUM** |

The United States, through undersigned counsel, hereby responds to the objections raised by the defendant, James Bond ("Defendant"), to the Draft Presence Report ("Draft PSR"). (Doc. 171-72). In addition, the United States respectfully requests that the Court accept the plea agreement and impose a term of five years of imprisonment followed by five years of supervised release. (Doc. 161).

Respectfully submitted this 21st day of May, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

  *s/ Sheila Phillips*
SHEILA PHILLIPS
RACHEL E. NAVA
Assistant U.S. Attorneys

### **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    RELEVANT FACTS**

In February 2023, the United States Department of Homeland Security ("HSI") in Phoenix, Arizona learned of allegations that Defendant, engaged in commercial sex acts with multiple Colombian victims in the Spring of 2022, he recorded the sex acts, and he uploaded the video recordings to his website, "travelvids.xyz." HSI agents confirmed that Defendant is a United States citizen who traveled to Medellin, Colombia between March 13, 2022 and April 15, 2022. In March and June of 2023, HSI agents purchased undercover subscriptions to Defendant's website, which redirected them to his Telegram channel. On Defendant's Telegram channel, agents observed recordings of Defendant engaging in sex acts with each of the victims listed in the superseding indictment. The victims were subsequently identified, located, and interviewed.

The victims disclosed that, on various dates, they met Defendant at rental properties in Colombia where they engaged in sex acts with him, collectively and/or individually, in exchange for money. The victims stated that the amount of payment ranged from $100,000 to $200,000 in Colombian pesos. Defendant recorded himself engaging in sex acts with all the victims. None of the victims gave him permission to upload the recordings to his Telegram channel. When some of the victims learned that Defendant had uploaded the recordings, they reported the offenses to law enforcement in Colombia.

**II.    PROCEDURAL BACKGROUND**

On April 15, 2025, a federal grand jury returned a superseding indictment on twenty-five counts of Production and Distribution of Child Pornography. (Doc. 93). On December 17, 2025, Defendant pleaded guilty to an information charging him with one count of Engaging in Illicit Sexual Conduct in Foreign Places, a Class B felony, in violation of 18 U.S.C. § 2423(c). (Doc. 161). Pursuant to the plea agreement, the parties stipulated that (1) the term of imprisonment shall not exceed 60 months or five years; (2) Defendant

shall be placed on a term of supervised release for five years; (3) Defendant shall submit to a psychosexual assessment; and (4) Defendant shall pay restitution to the victims. (*Id*.). As part of this guilty plea, Defendant admitted to travelling from the United States to Colombia in 2022. (*Id*.). While in that foreign country, he engaged in sex acts with the minor victim, listed as MV7, recorded those sex acts, and he knowingly chose not to ask her age before making the recording. (*Id*.). He admitted that the production of child pornography violated both United States and Colombian law. (*Id*.). On January 2, 2026, the Court accepted Defendant's guilty plea, deferring acceptance of the plea agreement until the time of sentencing. (Doc. 165).

In preparation for sentencing, the United States Probation Office ("Probation Office") submitted a Draft PSR to the parties. (Doc. 171). Defendant filed an objection to the Draft PSR, arguing the following: (1) the draft lacks any mention of critical mitigation material; (2) the draft incorrectly uses the cross-reference in United States Sentencing Guideline ("U.S.S.G.") §2G1.3(c)(1) to apply U.S.S.G. §2G2.1 because he did not plead to a count involving the production or distribution of child pornography; and (3) the draft incorrectly applies adjustments or enhancements pursuant to U.S.S.G. §§2G2.1(b), 3B1.1(c), 3B1.4, and 4B1.5(b)(1). (Doc. 172).

### III.    RESPONSE TO DEFENDANT'S OBJECTIONS

#### a.  The Use of Mitigation Material.

The United States does not oppose Defendant supplementing the record with what it views as critical mitigation material pursuant to Title 18, United States Code ("U.S.C."), Section 3553(a). (Doc. 172). The United States notes that, although it is not required to do so, it provided all mitigation material to the Probation Office upon Defendant's request. The Probation Office had the opportunity to determine whether such material was relevant to the final recommended advisory guideline range. The United States further notes that the mitigation material, which contains over a thousand pages of documents, helped Defendant secure a more favorable plea agreement. This does not mean that the United States agrees with the relevance of each portion of the mitigation material or its

admissibility at trial, simply that the United States reviewed and considered the material in the context of plea negotiations.[1]

### b. Objection to the Application of U.S.S.G. §2G2.1.

The United States opposes Defendant's objection to the application of U.S.S.G. §2G2.1. (Doc. 171-72). The Probation Office correctly interpreted the mandatory cross-reference in U.S.S.G. §2G1.3(c)(1) to use U.S.S.G. §2G2.1 in determining Defendant's base offense level. (Doc. 171 at 15).

First, the cross-reference triggering U.S.S.G. §2G2.1 applies based on the offense and factual basis in Defendant's plea agreement. (Doc. 161). There, Defendant admitted that he "engaged in sex acts with MV7 for the purpose of making visual recordings of [his] sex acts with her." *Id*. Pursuant to U.S.S.G. §2G1.3(c)(1), "[i]f the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, apply §2G2.1 … if the resulting offense level is greater than that determined" by U.S.S.G. §2G1.3(a) through (b). The cross-reference in U.S.S.G. §2G1.3(c)(1), expressly lists "Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material" as such an offense. Thus, the Draft PSR correctly used U.S.S.G. §2G2.1(a) through (b) to determine Defendant's base offense level and final total offense level. (Doc. 171 at 15-16).

Second, the cross-reference triggering U.S.S.G. §2G2.1 also applies based on relevant conduct that Defendant produced recordings of himself engaging in sex acts with

---

[1] Defendant had ample opportunity to submit mitigation material directly to the Probation Office before the Draft PSR, if he felt it was crucial to determining his sentence. After receiving the mitigation material, the Probation Office indicated in an email to the United States that the information would not be included in the PSR based on their internal policies. Instead, the information is better suited for a sentencing memorandum because it does not impact the advisory guideline range.

the minor victims associated with this case. Pursuant to U.S.S.G. §1.1B1.3(a), relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant … that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." This is true even if the defendant does not admit to such conduct in the plea agreement. "The Sentencing Guidelines make clear that a cross-reference may be applied on the basis of relevant conduct alleged on charges dismissed pursuant to a plea agreement." *United States v. Speelman*, 431 F.3d 1226, 1231 (9th Cir. 2005); *see also United States v. Wright*, 373 F.3d 935, 945 (9th Cir. 2004) ("Under U.S.S.G. § 1B1.3(a), cross-references 'shall' be determined on the basis of relevant conduct."). Here, Defendant's relevant conduct includes a wide range of acts associated with charges dismissed pursuant to his plea agreement. (Doc. 171 at 5-13, 15). Thus, the Draft PSR accurately applied the cross-reference in U.S.S.G. §2G1.3(c)(1) based on the offense and relevant conduct.

### c. Objections to Adjustments Under U.S.S.G. §2G2.1(b).

The United States opposes Defendant's objections to the Draft PSR's application of adjustments related to specific offense characteristics under U.S.S.G. §2G2.1(b). (Doc. 171-72). Defendant again argues that the two-level increases to the base offense level under U.S.S.G. §§2G2.1(b)(1)(B) and 2G2.1(b)(3) do not apply because he did not plead guilty to a count involving the production or distribution of child pornography. (Doc. 172 at 15). These objections derive from Defendant's larger objection to the application of U.S.S.G. §2G2.1 to his offense, which the United States addresses above. Because U.S.S.G. §2G2.1 applies, the two-level increases are appropriate based on the age of the victim under U.S.S.G. §2G2.1(b)(1)(B) and evidence Defendant knowingly engaged in distribution under U.S.S.G. §2G2.1(b)(3). The offense involving MV7 and the relevant conduct both justify the application of these adjustments, specifically evidence that Defendant distributed recordings of himself engaging in sex acts with MV7 and other minors under 16 years old via his Telegram channel. (Doc. 171 at 9-13, 15-16).

For the two-level increase under U.S.S.G. §2G2.1(b)(2)(A), Defendant argues the Court cannot apply this adjustment because evidence of sexual acts or contact is an element of the offense. Defendant provides no legal basis for this objection. (Doc. 172 at 15). As noted in the Draft PSR, the offense involved penile-vaginal intercourse with MV7, which constitutes a sexual act. (Doc. 171 at 11, 16). *See* 18 U.S.C. § 2246(2)(A). Although the Court must not double count enhancements, "it is sometimes authorized and intended by the Sentencing Guidelines when each invocation of the behavior serves a unique purpose under the Guidelines." *See United States v. Holt*, 510 F.3d 1007, 1011 (9th Cir. 2007) (citation and internal quotation marks omitted). The specific sexual act associated with the offense involving MV7 constitutes a separate and distinct harm from any other increase recommended in the Draft PSR. (Doc. 171 at 15-17). *See United States v. Stoterau*, 524 F.3d 988, 1001 (9th Cir. 2008) (finding increase associated with "sexual contact" to be a "different aspect" of the defendant's offense, and "separately authorized" from increases associated with the production and distribution of child pornography).

For the two-level increase under U.S.S.G. § 2G2.1(b)(6)(B)(i), Defendant argues the evidence does not show Defendant used a computer or computer service to solicit MV7's participation in sexually explicit conduct. (Doc. 172 at 15). As described in the Draft PSR, there is sufficient evidence to show that Defendant used a minor, referred to as MR-2, to recruit MV7 through a social media platform. (Doc. 171 at 11-12). *See United States v. Jimenez*, 300 F.3d 1166, 1169 (9th Cir. 2002) (recognizing that an increase to a defendant's offense level must be supported by a preponderance of the evidence). Defendant did so for the purpose of producing sexually explicit material. *See* U.S.S.G. § 2G2.1(b)(6)(B)(i). This increase is therefore justified.

### d.  Objection to Role Adjustments Under U.S.S.G. §§3B1.1(c) and 3B1.4.

The United States opposes Defendant's objections to the Draft PSR's application of role adjustments under U.S.S.G. §§3B1.1(c) and 3B1.4. (Doc. 171-72). Both adjustments are based on evidence, both direct and circumstantial, that Defendant used minors in Colombia to recruit his minor victims. (Doc. 171 at 11-12, 16). For the offense involving

MV7, as addressed above, there is sufficient evidence establishing that Defendant used MR-2 to recruit MV7. (*Id*.). This alone supports the recommended role adjustments because it shows that Defendant acted as an organizer under U.S.S.G. §3B1.1(c), and he used a minor to commit the crime under U.S.S.G. §3B1.4 – which were enacted to protect different harms and avoids impermissible double counting. Even so, the recommended role adjustments can be established through relevant conduct, which shows a pattern of Defendant using minors to recruit, solicit, and entice his minor victims to engage in the offenses listed in the superseding indictment.[2] (Doc. 171 at 10-13). *See* U.S.S.G. §1.1B1.3(a) (defining relevant conduct).

### e. Objection to Enhancement Under U.S.S.G. §4B1.5(b)(1).

The United States opposes Defendant's objection to the Draft PSR's application of the "pattern of activity" enhancement under U.S.S.G. §4B1.5(b)(1). (Doc. 171-72). Defendant seems to argue that the current case represents an anomaly in his larger pattern of behavior, namely that much of his foreign travel involved the creation of legal, adult pornography. (Doc. 172 at 16). To justify an increase under U.S.S.G. §4B1.5(b)(1), the evidence must show "the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." Application Note 4(B)(i), U.S.S.G. §4B1.5(b)(1). The "occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion." Application Note 4(B)(ii), U.S.S.G. §4B1.5(b)(1). As relevant here, the term "prohibited sexual conduct" is defined as "any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B)" and "the production of child pornography." Application Note 4(A), U.S.S.G. §4B1.5(b)(1).

---

[2] Multiple victim statements indicate that Defendant attempted to recruit each of them to find him other minors to engage in sex acts, and other evidence establishes that Defendant used MR-1 to solicit and recruit MV1 and MV3. (Doc. 58, Exhibit 6, pages 18, and 23-24, Bates 000618, 000623-000624; Exhibit 10, Report of Investigation, pages 1-2, Bates 0001-0002; 24-6304-MB, Affidavit SW for Defendant's Devices, ¶¶ 23-34, Bates 001180-001190).

Taken together, the offense involving MV7, a violation of 18 U.S.C. § 2423(c), and relevant conduct that Defendant produced child pornography show that he engaged in the requisite "prohibited sexual conduct" for the purposes of this enhancement, and he engaged in such conduct on more than two separate occasions. (Doc. 171 at 4, 6-12). Defendant had sex with ten confirmed minor victims. He recorded the sex acts, either knowing they were minors or recklessly failing to confirm their ages. (Doc. 171 at 6-12). Given this evidence, the fact that Defendant also created legal, adult pornography is not relevant to whether the "pattern of activity" enhancement under U.S.S.G. §4B1.5(b)(1) applies. *See generally* Application Note 4(A), U.S.S.G. §4B1.5(b)(1). The five-level increase for this enhancement is therefore justified.

The United States agrees with the Draft PSR's offense level computation, giving Defendant a final total offense level of 43.[3] (Doc. 171 at 15-17). This results in an advisory guideline range of 360 months' imprisonment. (Doc. 171 at 34).

## IV.    SENTENCING MEMORANDUM

Despite the much higher guideline range in the Draft PSR, the United States respectfully requests that the Court accept the plea agreement and impose a term of five years of imprisonment followed by five years of supervised release. The plea agreement provides benefits to both Defendant and the United States. Most importantly, the plea agreement ensures justice for the victims and creates safeguards to protect the public from future harm.

Although the Sentencing Guidelines are "the starting point and the initial benchmark" at sentencing, they are not the final word. *Gall v. United States*, 552 U.S. 38, 49 (2007). After considering the guideline range, the "district court should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). As such, the law does not require a rigid approach to sentencing and does not necessitate "extraordinary circumstances to

---

[3] This computation accurately incorporates a three-level decrease for Defendant's "acceptance of responsibility" under U.S.S.G. §3E.1.1. (Doc. 171 at 17).

justify a sentence outside the Guidelines range." *Gall*, 552 U.S. at 47; *see also United States v. Thompson*, 130 F.4th 1158, 1164 (9th Cir. 2025) (recognizing that there is no "presumption that a sentence outside the Guidelines range is unreasonable").

In *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009), a case involving the attempted receipt and possession of child pornography, the Ninth Circuit found no abuse of discretion where the district court deviated from the guideline range of 41 to 51 months of imprisonment and imposed a term of five years of probation. There, the Ninth Circuit found that the district court's "unique familiarity with the defendant, the case's circumstances, and numerous other cases like it" justified such a variance. *Id*. at 877. Specifically, the district court had adequately considered the factors in 18 U.S.C. § 3553(a), including disputed evidence of an aggravating factor, the mitigating characteristics of the defendant, the threat of imprisonment if he violated probation, the onerous restrictions associated with probation, the likelihood of rehabilitation, and his "dissimilarity with others convicted of the same offense." *Id*. at 873-77.

As in *Autery*, the United States believes that, based on the entire scope of the evidence and extensive mitigation material, a term of five years of imprisonment is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). Specifically, this sentence will adequately promote respect for the law, provide just punishment for the crime, protect the public from future crimes, and deter future criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(A)-(C).

### a. Benefits of the Plea Agreement to the United States.

The plea agreement benefits the United States by ensuring a felony conviction for a sex offense, additional incarceration, a period of supervised release, and sex offender registration for 25 years. (Doc. 161). The plea agreement includes an appellate waiver, bringing finality and closure to the victims. (*Id*.). The plea agreement also avoids the risk of trial, a factor the United States took into consideration during plea negotiations. Such factors include, but are not limited to: (1) the difficulties associated with translating large quantities of recordings and documents from Colombian Spanish into English; (2) the

complexities of prosecuting an international investigation in the United States; (3) the avoidance of significant trial-related expenses, which will require interpreters and foreign travel costs; (4) the potential for juror confusion regarding the age of consent in Colombia; (5) the complexities of Defendant's likely defense, which may include allegations related to the Colombian law enforcement and non-profit organization, as well as evidence from unrelated Colombian prosecutions involving similar offenses; and (6) the avoidance of extensive litigation associated with those allegations.

Additionally, the plea agreement benefits all Colombian victims listed in the superseding indictment by securing restitution and avoiding the significant stresses associated with a trial in the United States.

### b.  Benefits of the Plea Agreement to Defendant.

The plea agreement benefits Defendant by reducing his potential term of imprisonment after trial. Based on the Draft PSR, Defendant is facing the equivalent of life in prison if he is convicted of all counts at trial. (Doc. 171 at 16-17, 20). *See* 18 U.S.C. § 2251(e). The plea agreement limits his term of supervised release to five years. *See* 18 U.S.C. § 3583(k). The plea agreement also provides for the dismissal of the superseding indictment, potential deletion of a fine, and finality regarding the pending charges.

### c.  Factors Supporting the Plea Agreement and Recommended Sentence.

#### i.  *Nature and Circumstances of the Offense.*

The facts of this case are accurately set forth in the Draft PSR, and the United States will not reiterate them here. (Doc. 171 at 5-14). Simply stated, Defendant engaged in serious criminal conduct and the Court must consider that conduct in imposing an appropriate sentence. (*Id*.). Here, the evidence shows that Defendant paid to have sex with the minor victims, recorded those sex acts, and profited from the distribution. (*Id*.). Although the victims agreed to have sex for money, none could legally consent to do so. Most of the victims did not consent to Defendant recording the sex acts, and none of the victims consented to the distribution of those recordings. This subjected the victims to repeated and heightened victimization.

As noted above, Defendant provided extensive mitigation material. Although the United States does not concede that the allegations presented in the mitigation material are directly relevant to the current case, particularly those related to the Colombian law enforcement and non-profit organization, the Court has the authority to determine that such material justifies a downward variance. *See* 18 U.S.C. § 3553(a)(1). Such factors may be considered by the Court in balancing the complex set of facts and issues associated with this case. *See Autery*, 555 F.3d at 873-74 (finding that the district court could consider whether disputed evidence impacted the weight given to the nature and circumstances of an offense).

### ii.  History and Characteristics of Defendant.

The United States contends that Defendant has issues with women, an overinflated view of himself, and has consistently minimized or lied about his role in the offenses. That being stated, the United States acknowledges that aspects of his personal background support a downward variance, including, but not limited to: (1) Defendant's acceptance of responsibility, which will prevent the victims from reliving the offenses at trial; (2) he will be required to serve five years of supervised release, with the possibility of lifetime supervised release, which entails significant sex offender conditions; (3) his criminal history is dated and does include prior sex offenses; (4) he has family support; (5) he had a difficult childhood; (6) his psychosexual evaluation indicates that he does not have a sexual attraction to prepubescent minors; (7) he has expressed a desire to engage in vocational or rehabilitative programs while incarcerated; and (8) a term of five years of imprisonment is still a substantial custodial sentence that will have a meaningful effect on him. (Doc. 171 at 17-28). *See* 18 U.S.C. § 3553(a)(1).

### iii.  Seriousness of the Offense, Promoting Respect for the Law, and Provide Just Punishment.

Although the recommended sentence falls well below the advisory guideline range, a term of five years of imprisonment, followed by five years of supervised release, is a significant sentence. This is Defendant's first time being incarcerated in a meaningful

capacity, either locally or federally. (Doc. 171 at 17-21). As part of Defendant's supervised release, he will be required to abide by a number of conditions, including restrictions on foreign or domestic travel, requirements associated with sex offender treatment and monitoring, prohibitions related to substances, limitations on his access to minors and computer usage, prohibitions related to social media platforms, and prohibitions regarding any form of sexually explicit material. (Doc. 171 at 38-45). The Court also has the authority to extend Defendant's supervised release up to life if he violates his release conditions. *See* 18 U.S.C. § 3583(k).

Additionally, Defendant will have to register as a sex offender for 25 years and report any travel outside the United States during that time or face an additional term of imprisonment. *See* 18 U.S.C § 2250(b) (providing penalties for unreported foreign travel for sex offenders). Thus, the penalties and restrictions associated with Defendant's sentence will be severe and onerous. *See* 18 U.S.C. § 3553(a)(2)(A).

### iv.    *Deterrence and Need to Protect the Public from Further Crimes.*

As noted above, the recommended sentence of five years of imprisonment will represent Defendant's first term of significant incarceration. Upon his release, he will face onerous restrictions that will prevent or limit him from accessing social media platforms, using a computer, viewing or producing sexually explicit material, and contacting minors in any capacity. (Doc. 171 at 41-45). Defendant will be required to participate in sex offender treatment and monitoring. (Doc. 171 at 41-42). He will be a convicted a felon and a registered sex offender. *See* 18 U.S.C § 2250(a) (providing penalties for failing to register as a sex offender). Such factors will deter him from engaging in future similar conduct, provide sufficient safeguards, and protect the public from further crimes. *See* 18 U.S.C. § 3553(a)(2)(B)-(C); *see also Autery*, 555 F.3d at 876 (finding that the district court had the discretion to conclude that the threat of additional incarceration, along with the "societal stigma and numerous practical restrictions designed to protect children," acted as an adequate deterrence and protected the public).

### v.  Need for Educational and Correctional Training.

The recommended sentence would allow Defendant to seek and benefit from educational and vocational training, providing him with a skill set outside of producing sexually explicit material. Defendant may also benefit from mental health assessments and sex offender treatment, allowing him to evaluate his own feelings toward sex, women, and power dynamics. Counseling will also help him process the lack of positive relationships in his life and learn how to foster healthy relationships. All of which should reduce his risk of reoffending. *See* 18 U.S.C. § 3553(a)(2)(D).

### vi.  Sentences Available and Guideline Range.

As noted above, the recommended sentence still represents a significant term of imprisonment and supervision. The Draft PSR provided an accurate offense level computation, giving Defendant a final total offense level of 43, resulting in an advisory guideline range of 360 months' imprisonment. (Doc. 171 at 15-16, 34). The applicable offense in the plea agreement carries a maximum of 30 years of imprisonment, or the resulting advisory guideline range would be, effectively, a life sentence. *See* 18 U.S.C. § 2423(c). The United States acknowledges the recommended sentence will represent a significant downward variance from the statutory and advisory guideline range. *See* 18 U.S.C. § 3553(a)(3)-(4). But this factor is significantly outweighed by other factors set forth in 18 U.S.C. § 3553(a). *See Gall*, 552 U.S. at 51 (justifying the extent of a variance based on the "totality of the circumstances").

### vii.  Need to Avoid Unwarranted Sentencing Disparities.

Although the recommended sentence appears to be lower than other defendants who have engaged in illicit sexual conduct in foreign places or produced child pornography, it is useful to consider two similarly situated defendants in the District of Arizona. *See* 18 U.S.C. § 3553(a)(6).

In *United States v. James Allan Morrow*, CR-11-01564-PHX-DLR, the defendant pleaded guilty to Engaging in Illicit Sexual Conduct in Foreign Places in violation of 18 U.S.C. § 2423(c), with a stipulated sentencing range of seven to 20 years of imprisonment.

United States District Court Judge Douglas L. Rayes sentenced the defendant to a term of 108 months of imprisonment.

The facts in that case, however, differ from the current case. There, the defendant engaged in sex acts with two minors, both 13 years old, in Thailand and recorded the sex acts. The defendant provided both minor victims with drugs. Upon leaving Thailand, Defendant traveled to Cambodia where he was arrested for similar conduct and spent significant time incarcerated there, before being extradited to the United States to face charges in the District of Arizona. (CR-11-01564-PHX-DLR, Doc. 56). Here, Defendant's conduct involves victims between 14 and 17 years old, he did not drug the victims, and he was not convicted of similar offenses in a second foreign country.

In *United States v. Daniel Godinez Oseguera*, CR-23-01036-TUC-JAS, pleaded guilty to Transportation of Child Pornography in violation of 18 U.S.C. § 2552(a), with a stipulated term of 60 months of imprisonment. In that case, the defendant traveled into Mexico to engage in sex acts with one minor victim, who was 14 years old at the time. The defendant recorded those sex acts and sent them to a relative. He is awaiting sentencing, which is set for August 26, 2026, before United States District Court Judge James A. Soto. (CR-23-01036-TUC-JAS, Docs. 9 and 91). Although the case has not reached final disposition, *Godinez* represents a case where a similarly situated defendant received a similar plea agreement.

Looking more broadly, the median sentence for child pornography-related convictions in the Ninth Circuit is 78 months of imprisonment, while the median sentence for other types of sex crimes not involving sexual abuse is 13 months of imprisonment. The median sentence for commercialized vice is significantly lower at one month. The recommended sentence, pursuant to the plea agreement, provides for up to five years of imprisonment, which is consistent with Ninth Circuit median sentences for at least some similarly situated defendants. *See Sentence Length by Type of Crime, Table 7*, United States Sentencing Commission (2025), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2025/9c25.pdf.

**viii.   *Need to Provide Restitution for the Victims.***

The plea agreement provides for a minimum of $5,000 in restitution for each of the victims in the superseding indictment. (Doc. 93, 161). This stipulation is significant and warranted. As indicated in the victim impact statements, Defendant's actions in this case caused the victims emotional and physical harm. (Doc. 171 at 14-15). Although the victims have not submitted restitution requests, it is highly possible that the results of this trauma have had financial consequences. (Doc. 171 at 15). The plea agreement secures a conviction, guarantees victims the right to seek restitution, and ensures that Defendant will be held financially accountable for his actions. Moreover, the recommended sentence will allow Defendant to seek employment upon his release and pay any future restitution orders. *See* 18 U.S.C. § 3553(a)(7).

**V.   CONCLUSION**

The United States respectfully requests that the Court accept the plea agreement and impose a term of five years of imprisonment followed by five years of supervised release.

Respectfully submitted this 21st day of May, 2026.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ Sheila Phillips*
SHEILA PHILLIPS
RACHEL E. NAVA
Assistant U.S. Attorneys

- 15 -

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

Myles Schneider and Karina Ordonez.
*Attorneys for Defendant*

*s/ Rachel E. Nava*
U.S. Attorney's Office