Myles A. Schneider, AZ Bar No. 028436
**Myles A. Schneider & Associates, LTD**
14001 N. 7th Street
Suite B104
Phoenix, AZ 85022
Telephone: (602) 926-7373
Facsimile: (877) 294-4254
Email myles@maschneider.com

Karina J. Ordonez, AZ Bar No. 028610
**KARINA ORDONEZ LAW OFFICE, PLLC**
2642 E Thomas Road
Phoenix, AZ 85016
Phone: (480) 729-4119
Fax: (602) 296-0460
karina@karinaordonez.com
**Attorneys for Defendant**
**James Bond**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| United States of America | |
|---|---|
| Plaintiff, | Case No.: 23-CR-01238-PHX-KML |
| v. | **DEFENDANT'S SENTENCING MEMORANDUM** |
| James Bond, | |
| Defendant. | **(Defendant in Custody)** |

COMES NOW, Defendant, James Bond, by and through undersigned counsels for Defendant, submits this Sentencing Memorandum in support of his request for this Honorable Court to accept the underlying plea agreement and to impose a sentence of no more than 60 months, followed by 5 years supervised release, no more than 5 years of sex offender registration, and no fine as Defendant is indigent.

**ARGUMENT AND AUTHORITIES**

In light of the Supreme Court's decision in *Gall v. United States*, 552 U.S. 38 (2007), it is clear that this Court enjoys enormous discretion in determining the appropriate sentence for Defendant James Bond. For the reasons set forth below, Defendant respectfully submits that, based on the factors set forth in 18 U.S.C. §3553(a), a sentence of no more 57 Months is appropriate in this case.

**I.      Section 3553(a) Factors**

The federal sentencing statute requires that the Court tailor an individualized sentence that is "sufficient, but not greater than necessary" to comply with the purpose of 18 U.S.C. § 3553(a), and, in "determining the particular sentence to be imposed, shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed;

    a.  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b.  to afford adequate deterrence to criminal conduct;

    c.  to protect the public from further crimes of the defendant; and

    d.  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). In this case, a sentence of no more than 57 months is just and appropriate, for the reasons stated below.

(1) The Nature and Circumstances of the Offense:

The Final Plea: On December 17, 2025, Defendant pleaded guilty to Count 1 of an Information charging the defendant with Engaging in Illicit Sexual Conduct in Foreign Places, in violation of Title 18, United 24 States Code ("U.S.C."), Section 2423(c), a Class B felony offense. (See Doc. 161.) Defendant admitted that between March 13, 2022, to April 15, 2022, he traveled by airplane from the United States through Mexico and then to Colombia. While in Colombia Defendant admitted that he engaged in sex acts with MV7 for the purpose of making visual recordings of his sex acts with her. The visually recorded sex acts included oral sex and sexual intercourse.

Additionally, he admitted that he knowingly chose not to ask MV7 her age before he engaged in sex acts with her and recorded those sex acts. He agreed that the government can prove at trial that MV7 was 15 years old between March 13, 2022, and April 15, 2022.  He admitted that he also agreed that the production of child pornography, which constitutes illicit sexual conduct, is a violation of both United States and Colombian law.

This plea was negotiated after several offers to Defendant by the Government:

The First Plea: offered by the Government required Defendant to plead guilty to Counts 1, and 3 through 8 of the Indictment, charging the defendant with violations of 18 United States Code (U.S.C.) §§ 1591(a)(1), 1591(b)(2), 1591(c), 1596(a)(1), and 3238, Sex Trafficking of a Minor, all Class A felony offenses. The First Plea stipulated a Range of Potential Sentence. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant's total sentence including all seven counts shall be no less than 240 months of imprisonment, and no greater than 420 months of imprisonment (20-35 years).   This plea was rejected by Defendant.

The Second Plea: offered by the Government was a revision of the First Plea seeking a plea of guilty by Defendant to Counts 23, 29, and 36 of the Indictment, charging the defendant with violations of 18 United States Code (U.S.C.) §§ 2252(a)(2) and 2252(b), Distributing Child Pornography, a Class C felony offense.  The stipulated time for this plea was the same and the First Plea Offer.  This plea was rejected by Defendant at a *Fry/Cooper* hearing on April 15, 2025.  (See Doc. 92.)

The Third Plea: offered by the government was on August 18, 2025.  It sought a plea of guilty to Counts 8, 13, and 24 of the Superseding Indictment, charging the defendant with violations of 18 United States Code (U.S.C.) §§ 2252(a)(2) and 2252(b), Distributing Child Pornography, a Class C felony offense; still capping the sentence at 120 months of imprisonment, and no greater than 180 months of imprisonment (10 – 15 years).

Mitigation: on November 22, 2025, the Defense submitted its Deviation Request to the Government attaching 44 Exhibits raising significant reasonable doubt about the investigation by the Colombian National Police ("CNP"), the NGO Libertas International and its founder Tyler Schwab.  (See Objection to the PSR at Doc. 172.) The mitigation exposed a serious risk to the Government's case against Defendant.

Mitigation exposed possible entrapment and mistake of age defenses.  The mitigation memorandum to the government reveals facts that would make the government's case, in major part, replete with reasonable doubt.  Such as:

    a.  HSI Agent Steven Mullens has or does sit on the Board of Libertas International. (He currently denies that he is still a member of Libertas International.).

    b.  Mr. Schwab's social media and podcasts indicates that Libertas had a prominent role in the investigation of Bond along with the CNP and HSI regarding Mr. Bond and multiple United States Citizens; as many as Seven (7). In fact, Schwab takes credit for HSI's investigation of Bond.

    c.  The Colombian Government enlists the help of the United States Government only after losing two cases initiated by Schwab and Libertas, including Orion Depp and Richard Oplaniski, whose acquittals were based on the conduct of Libertas and Schwab

    d.  Libertas and Schwab are currently being investigated by the CNP based on allegations of conduct for bribery, sexual exploitation of minors, fraud, and criminal conspiracy.

    e.  Credible evidence shows that Schwab is paying minor victims in exchange for their testimony, coaching witnesses, and most alarming using minor victims.

    f.  Private Investigator Rosenburg Rivera Hernandez's Report indicates that MV1 and MV2 use Tinder and false dates of birth on their social media platforms to lure U.S. Citizens to engage in sexual activity.

    g.  During the Orion Depp trial, MV2 and CNP Officer Haileen Escobar Chaparro testify in Medellin, Colombia. During the trial, MV2 discloses that Libertas lied and paid MV2 to assist them in luring Mr. Depp to engage in sexual conduct with minors. In the same trial, Officer Haileen Escobar Chaparro distances her working relationship with Libertas and is impeached as a witness.

    h.  An MV in the Michael Roberts and Orion Depp case, S.N.A.G. is dating Tyler Schwab.  Her social media depicts full bodied, close

embraces with increased familiarity or personal significance, as compared to brief or side angled hugs typically seen in formal or casual settings. Schwab and the MV travel the world together under the guise of the promotion of Schwab's work. They even have matching tattoos, which they got together. In Schwab's case, the government sheepishly excuses Schwab's behavior because he said he was going to adopt this victim of sexual assault, notwithstanding the fact that she is now 18 and has two living parents who love her. Schwab's smug behavior is beneath contempt.

i.  And S.N.A.G. at the time she applied to work for Orion Depp from January 2022 to May 2022, she was already identified as an MV in the Michael Roberts case, and she was already involved with Libertas International. More notably, SNAG claims she never worked for Libertas International but she travels the world and attends conferences as a speaker on behalf and in conjunction with Libertas International.

j.  MV2 in the Bond case coincides with an MV in the Orion Depp case. It was her testimony in the Orion Depp case that explained that Libertas uses young females to lure foreign men to have sex with them.

The Fourth Plea: required defendant to plead guilty to Counts 1 and 2 of an Information charging the defendant with Engaging in Illicit Sexual Conduct in Foreign Places, in violation of Title 18, United States Code ("U.S.C."), Section 2423(c), Class B felony offenses. The Factual Basis for the plea required Defendant to admit to the following: Between March 13, 2022, to April 15, 2022, I traveled by airplane from the United States through Mexico and then to Colombia. While in Colombia, I had sex with MV1, who was 14 years old, and with MV3, who was 17 years old. I knew that MV1 and MV3 were under the age of 18 at the time. I paid MV1 and MV3 to each have sex with me. Sex included intercourse and oral sex. I digitally recorded MV1 and MV3 while they were having sex with me. I agree that paying a minor to have sex is a commercial sex act, which constitutes illicit sexual conduct, and is in violation of both United States and Colombian law.

A *Fry/Cooper* was set and heard on December 16, 2025, whereby Defendant rejected this plea as he could not and would not admit to sex in foreign places with MV1 or MV3.  On the evening of December 16, 2025, all counsel worked out a compromise and on December 17, 2025, the plea agreement herein was executed. On the same day, after consultation with Magistrate Morrissey, this final plea was taken. Based upon the facts, circumstances, good faith negotiations, and consideration of the victims herein, this final plea is justified and does not undermine the purpose of sentencing.

(2) History and Characteristics of Defendant

Defendant was born September 10, 1985, in Hayward, California, to James Robert Schulte, 64, a retired house painter who resides in Palm Springs, California, and Christine Marie Janda, deceased. His mother died by suicide in 2019 at the age of 58. Defendant's parents divorced when he was an infant due to ongoing disputes. His father married Melissa Schulte in 1992 when the defendant was 7 years old. He has one paternal half-sister from this union: Kali Schulte, 32, who resides in Colorado. The defendant does not have contact with his half-sister. His father and stepmother divorced in 1996 when his father was sentenced to prison for three years and six months. He believed the conviction was related to property theft or damage. The defendant's father was released from custody in 1999 when the defendant was 14 years old. According to the psychosexual evaluation report, Defendant reported his father pleaded temporary insanity to a property damage charge and was sentenced to a mental health institution for three years and six months. He did not maintain contact with his stepmother following his father's incarceration. Defendant's mother married Melvin, whose last name is unknown, in 1994 or 1995 when the defendant was 9 or 10 years old. They divorced in 1998 when the defendant was 13 years old due to ongoing arguments. The defendant has not had contact with his stepfather since the divorce in 1998. Defendant has a good relationship with his father and maintains regular contact with him.  (See PSR at 64.)

Defendant was primarily raised by his father in the Milwaukee metropolitan area until his father's incarceration when he was 11 years old. However, he maintained a relationship with his mother throughout his childhood. The defendant described a difficult childhood due to his father's absence and his mother's mental health and

substance use issues. His mother attempted suicide when he was approximately 12 years old. He recalled she called him on the phone to tell him she loved him and that it would be the last time they would be able to speak. Following the phone call from his mother, he contacted the police who responded to her residence and saved her. Due to her mental health and substance use issues, she sometimes left him alone for several consecutive days at a time. Nevertheless, he was never abused, and his basic needs were met throughout his childhood. At the age of 13, he relocated to Scottsdale, Arizona, to live with his paternal aunt, Dorthy Schulte, due to his mother's worsening mental condition and his father's incarceration. The defendant resided with his paternal aunt in Scottsdale until he reached adulthood. He subsequently lived with roommates in various rental properties around the Phoenix metropolitan area between the ages of 18 and 25. At age 25, Defendant moved to Japan to pursue an MMA fighting career, but he fled the country after one month due to the devastating effects of a tsunami that hit the region. (Id. at 66.)

The pinnacle of Defendant's MMA career was his win at China vs. The World. A promotion stacked with preeminent Chinese Fighters seeking to dominate the MMA promotion. Defendant was the only American to win.

### Defendant's Fight Record

| | | | | | |
|---|---|---|---|---|---|
| WIN | Bernard Fung | Rebel FC 6 - China vs. The World<br>Sep / 02 / 2017 | TKO (Punches) | 2 | 4:29 |
| WIN | Lukas Wijers | TFC 2 - Thailand Fighting Championship 2<br>Apr / 01 / 2017 | Decision (Unanimous) | 3 | 5:00 |
| LOSS | Trevor McKenzie | Primal FC - Dark Moon Rising<br>Mar / 24 / 2017 | Submission (Arm-Triangle Choke) | 2 | 4:09 |
| LOSS | Spencer Higa | Destiny MMA - Na Koa 2<br>Jan / 19 / 2013 | Submission (Rear-Naked Choke)<br>Kevin Yoshida | 1 | 0:41 |
| LOSS | Ian Dela Cuesta | KOTC - Ali'is<br>Jul / 14 / 2012 | Submission (Armbar)<br>Abe Rodriguez | 1 | 3:03 |
| LOSS | Sean Rush | ProElite 3 - Da Spyder vs. Minowaman<br>Jan / 21 / 2012 | Submission (Rear-Naked Choke)<br>Chris West<br>VIEW PLAY-BY-PLAY | 1 | 2:37 |

After Defendant left Japan, he briefly returned to the Phoenix metropolitan area and then relocated to Honolulu at age 25 to start a vacation rental property business and

continue to pursue his MMA fighting career. The defendant lived in Honolulu for six years and earned an income by subletting five rental properties during those years. At age 31, he moved to San Diego because he was unable to continue his rental property business.  Defendant lived in San Diego for approximately one year and worked as an Uber driver while living there. He subsequently lived in Los Angeles and San Francisco for approximately one year from the ages of 32 to 33 and continued to work as an Uber driver. The defendant briefly returned to Honolulu for four months at age 33 and then began to travel internationally until his arrest for the instant offense at the age of 38. He estimated he traveled to 14 countries including Costa Rica, Brazil, Colombia, Mexico, Thailand, Philippines, China, Japan, Vietnam, Taiwan, Cambodia, Indonesia, Singapore, and Malaysia. Airbnb and flight records contained in the discovery materials verified this information.

Additional character information comes from Defendant's friends and family:

**Defendant's sister, Kali Schulte writes:**
I've always admired James' adventurous nature, intelligence, and drive. He continually seeks to grow by embracing new experiences, expanding his knowledge, and prioritizing a healthy, active lifestyle. For instance, I have seen him motivate and inspire friends and family to adopt healthier habits by sharing his knowledge with enthusiasm, which is just one example of his genuine care and concern for their well-being. James is a person of integrity who takes responsibility for his actions. I am confident that he poses no threat to the community and will adhere to any conditions imposed upon him. He is honest, trustworthy, and fully committed to fulfilling his obligations.

**Defendant's aunt, Jeanne Kelley writes:**
Jaymes will ensure that unlawful actions will not happen again and will work hard to make amends and will bring good results to our society again.

**Defendant's aunt, Dorothy Schule writes:**
I've witnessed James' tears and pure sadness from his own personal losses. I've witnessed his smiles when he's making a person happy or someone laugh. I've witnessed him always keeping calm and collected with others would have lost it.  Some of my fondest memories are seeing the interaction between him and animals.

**Former significant other of Defendant's father, Nicole Schultz writes:**

After getting to know James I also saw a kind and compassionate person. One that wouldn't just stand by if he saw someone hurt or in trouble, and as a bit of a health nut enjoyed motivating people around him to eat healthier and exercise. I always noticed how people were drawn to his charismatic personality and how he inspired the people around him, myself included.

(3) <u>The Need for the Sentence to be Imposed:</u>

    a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. to afford adequate deterrence to criminal conduct;

    c. to protect the public from further crimes of the defendant; and

    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

There is no dispute that a sentence needs to be imposed. However, given the mitigation support in this case, the sentence in this case should reflect the actual crime committed, not one conjured up by a director of an NGO with nefarious designs. (i.e. to fundraise, seek restitution and possess minor victims as his own.) The Sentence that needs to be imposed must fit the criminal activity herein, not that of an Indictment superseded by the Information. However, the sentence should be sufficient but not greater than necessary to comply with the purpose of 18 U.S.C. § 3553(a):

In calculating the sentence, Defendant suggests the following guidelines pursuant to the USSG:

| Guideline | Description | Levels |
|---|---|---|
| §2G1.3(a)(4)[1] | <u>Base Offense</u>: Promoting a Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Transportation of Minors to Engage in a Commercial Sex Act or Prohibited Sexual Conduct; Travel to Engage in Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Sex Trafficking of | 24 |

---

[1] 18 U.S.C. 2423(c) is not specifically enumerated in the entire U.S.S.G. Guideline Manual except directing review of U.S.S.G. § 2G1.3.

| | | |
|---|---|---|
| | Children; Use of Interstate Facilities to Transport Information about a Minor.[2] (See Otherwise Category.) No cross reference meets the statutory language of 18 U.S.C. § 2423(c). | |
| §2G2.1(b)(1)(B) | Sexually Exploiting a Minor by Production of Sexually Explicit Visual Material[3] | +2 |
| §3E1.1(a) | Acceptance of Responsibility | -2 |
| §3E1.1(b) | Acceptance of Responsibility | -1 |
| | Total Offense Level | **23** |
| | Criminal History Category | **I** |
| | **Guideline Range is 45 to 57 Months** | |

This sentence, and its corresponding special conditions, will reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense and afford adequate deterrence to criminal conduct.

To protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, conditions of supervised release will meet this goal.

However, some of the recommended special conditions are not required and may deter Defendant from successfully completing supervised release. The following objections to those conditions are:

**OBJECTIONS TO SPECIAL CONDITIONS**

**Special Condition No.: 4:** "You are prohibited from making major purchases, incurring new financial obligations, or entering into any financial contracts in excess of $500 without the prior approval of the probation officer.

Objection: Defendant is not charged with any financial crime. To restrict Defendant from making purchase or incurring financial obligations in excess of $500 is

---

[2] Further, the words "Illicit Sexual Conduct in Foreign Places" also do not appear in the Guideline Manual.

[3] This is an adjustment from Defendant's Objections to the PSR at Doc. 172.

particularly onerous.  That means he cannot buy a car, rent a home, buy furniture for a home, invest in the trappings of a business, or much else.  Each time he desires to pay for the normal trappings of life, Defendant must seek permission from USA Probation. This is not only a burden on Defendant, but to probation as well.

**Special Condition No. 6:** "You must reside at and participate in a Residential Reentry Center, a residential substance abuse treatment program, a sober-living environment, or any combination thereof as approved and directed by the probation officer for up to 180 days, unless discharged earlier by the probation officer. You must follow all rules and regulations. You must contribute to programming costs in an amount determined by the probation officer.

Objection: Defendant does not have a substance abuse problem.  (See PSR at paragraphs 85 through 93.)  Moreover, Special Condition No. 1 already assures that Defendant, if needed, probation can required substance abuse treatment.   Therefore, special Condition 6 is redundant and unnecessary.

**Special Condition No. 12**: You must attend and participate in periodic polygraph examinations as a means to determine compliance with conditions of supervision and the requirements of your therapeutic program, as directed by the probation officer. No violation proceeding will arise solely on the result of the polygraph test. A valid Fifth Amendment refusal to answer a question during a polygraph examination will not be used as a basis for a violation proceeding. You must contribute to the cost of such polygraph examination not to exceed an amount determined to be reasonable by the probation officer based on ability to pay.

Objection: It was the opinion of the polygraphist that the data collected during the exam was indicative of the examinee being truthful to the relevant issues.  Moreover, the justification for polygraphs requested by USAPO is to enable the probation officer to keep informed as to the conduct and condition of the defendant to assist in confirming Defendant's overall compliance with his/her conditions of supervision.  In stark contrast to the justification is the language of the condition itself is contradictory.  The condition is clear on supervised release compliance.  It states that: "No violation proceeding will arise solely on the result of the polygraph test. A valid Fifth Amendment refusal to answer a question during a polygraph examination will not be used as a basis for a violation proceeding."   Hence, in using the polygraph, no violations will result.

Moreover, Special Condition 11 assures that Defendant is required to participate in sex offender treatment program. These types of professionals are in the best position to evaluate Defendant. No a polygraph examiner because Defendant showed no signs of deception during his exams. In fact, nothing was discovered aberrant during Defendant's polygraph about this 1) sex history, 2) elaboration of the instant event, and 3) maintenance, nor was anything discussed at all by USPO in the PSR that would reveal the need for polygraph sans the justification for the condition.

**Special Condition No. 13**: You must reside in a residence approved, in advance, by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change to allow the probation officer sufficient time to evaluate the proposed change. Any changes in the residence must then be preapproved by the probation officer. If, however, notifying the probation officer in advance, or obtaining preapproval, is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of the change or expected change.

Objection: This condition is redundant. Standard Condition No. 5 already applies to Defendant's residential requirements. Moreover, the justification for this additional condition ignores the fact that Defendant's victims are all residents of the Country of Colombia, potential victims and alcohol use. Again, the PSR clearly shows that Defendant does not have an alcohol problem. (See PSR at paragraph 85.)

## MODIFICATIONS TO SPECIAL CONDITIONS

**Special Condition No. 21**: You must not possess or use a laptop computer, desktop computer, cell phone, tablet, or any other device capable of connecting to the Internet, a cellular data network, or any other public or private network, or messaging system, that (1) can access materials with depictions of sexually explicit conduct involving children (as defined by 18 U.S.C. § 2256(2)), (2) gives you the capability to anonymously communicate with others, (3) can access or download images from the Internet at any location (including place of employment), (4) can access any Internet service provider, bulletin board system, chat rooms or other environment which allows for interaction with others or (5) can access any other public or private network or e-mail system. If internet access is approved by the probation officer, you must-at your own

expense and as directed by the probation officer-install on all devices capable of connecting to the Internet, a cellular data network, or any other public or private network or messaging system, hardware or software systems to monitor your use of those devices.

Modification of Special Condition No. 21: Special Condition 21 is an edict not to access a computer, cell phone or any other device capable of connecting to the Internet. 18 U.S.C. 3553(a)(2)(d) considers providing defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. By completely precluding Defendant from using the Internet, a cellular data network, or any other public or private network, or messaging system, assures his demise and precludes him from all the requirements of 3553(a)(2)(d) is not the most effective manner. Moreover, in this day and age you cannot do anything without a cell phone, computer or device that connects to the internet such as, look for a job, work, purchase goods and services, or even communicate with your probation office. This condition can be easily modified by removing the edict and requiring monitoring software on any device needed for successful probation.

## ADDITIONAL CONSIDERATIONS

Defendant Defendant's sentence is the result of a well-negotiated plea taking into consideration litigation risk, the facts in the case given the mitigation memorandum, along with the consideration of the re-traumatization of the victims and the stigma of trial. This peal also resolves the matter efficiently, consistent with the guidelines supporting the Information charged and takes into consideration the effect of deterrence on Defendant's behavior. Further, Special Conditions of Supervised Release are such that Defendant will be deterred from being a danger to the community while at the same time rehabilitating Defendant in the correct manner. Moreover, in custody programs and the bureau of prisons will be able to afford Defendant additional tools necessary for rehabilitation.

To show his commitment to rehabilitation, and the fact that Defendant takes his rehabilitation seriously, while in Detention, _Defendant completed over a hundred self-improvement classes_. Those classes include:

    1. The Freedom Fight Sex Addiction Recovery…;

    2. H.O.M.E. Healing Outreach to Men Everywhere;

3. Living Out Your Identity in Christin a Sexualize Culture;

4. How Can I Heal from Child Sexual Abuse?;

5. Sexual Wellness: Your Health, Your Body, Your…;

6. Wk-1 - CST-630:Respect for Life, Sex, Marriage, and Parenting:…;

7. Salud Sexual y tu Bienestar;

8. A Pathway to Recovery from Sex Addiction;

9. Child Abuse Prevention and Awareness for Supervisors and Managers;

10. Combating Sexual Harassment in the Workplace;

11. Etc…

See Exhibit B.


## **CONCLUSION**

The Plea Agreement should be accepted by this Honorable Court because it does not undermine the purposes of sentencing. Defendant Bond should not be assessed because the nature and circumstances of the offense do not warrant a 20-level increase because he plead guilty to travelling to Medellin, Colombia to illicit sexual conduct with a minor, he did not plea guilty to production or distribution of child pornography. Therefore, Defendant respectfully requests that he be sentenced to 45 to 57 Months followed by 5 years supervised release, no more than 5 years of sex offender registration, and no fine as Defendant is indigent.


RESPECTFULLY SUBMITTED this 8th day of May 2026.

MYLES A. SCHNEIDER & ASSOC., LTD.

/s/Myles A. Schneider
MYLES A. SCHNEIDER (AZ Bar No.:028436)
14001 N. 7th Street
Suite B104
Phoenix, AZ 85022
myles@maschneider.com
Telephone: 602-926-7373
Facsimile: 877/294-4254


KARINA ORDONEZ LAW OFFICE, PLLC

/s/ Karina J. Ordonez
KARINA J. ORDONEZ (AZ Bar No.:028610)
2642 E Thomas Road
Phoenix, AZ 85016
karina@karinaordonez.com
Telephone: (480) 729-4119
Facsimile: (602) 296-0460

**Attorneys for Defendant**
**James Bond**


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2026, I electronically transmitted the attached document using the CM/ECF system for filing, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

<u>/s/ Myles A. Schneider</u>


**INDEX OF EXHIBITS:** [4]

Exhibit A – Letters from Friends and Family Members of James Bond;

Exhibit B – Transcripts of Certificates of Achievement; and

Exhibit C – Letter from Defendant James Bond.

---

[4] Submitted to Chambers under Separate Cover